**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE:<br><br>WRS HOLDINGS, LLC, et al.,<br><br>Debtors. | Case No. 10-28457 (DHS)<br><br>Chapter 7<br>(Jointly Administered) |
| MFC CAPITAL FUNDING, INC. a Minnesota corporation,<br><br>Plaintiffs,<br><br>v.<br><br>VALOR EQUITY PARTNERS, L.P., VWR HOLDINGS, LLC, VALOR MANAGEMENT CORPORATION, WRS HOLDINGS, LLC, WRS, LLC, WOODS RESTORATION SERVICES OF MONTCLAIR, NJ, LLC, WOODS RESTORATION SERVICES, LLC, WOODS RESTORATION SERVICES OF S.C., LLC, ENVIRONMENTAL REMEDIATION CONCEPTS, LLC, WRS, INC., ROBERT WASIELEWSKI, ANTONIO GRACIAS, BRADLEY SHEFTEL, JONATHAN SHULKIN, CHESTER R. DUNICAN, NELSON SUN, ABC COMPANIES 1-10, JOHN DOE 1-10 AND JANE DOE 1-10 (fictitiously named individuals and entities),<br><br>Defendants. | Adv. Pro. No. 12-01137 (DHS)<br><br>Hearing Date: June 26, 2012 @ 10:00 a.m. |

# BRIEF IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE COGNIZABLE CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)

**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
973.596.4500
DB-6778
*Attorneys for Defendants Valor Equity Partners L.P., VWR Holdings, LLC, Valor Management Corporation, Antonio Gracias, Bradley Sheftel, and Jonathan Shulkin*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT AND INTRODUCTION ..... 1

I. Introduction ..... 1

ARGUMENT ..... 7

II. The Court Lacks Subject Matter Jurisdiction Over MFC's Claims Against The Moving Defendants ..... 7

A. There is no "related to" jurisdiction over MFC's claims ..... 7

B. There is no supplemental jurisdiction over MFC's claims ..... 12

C. Alternatively, the Court should determine that MFC's claims are non-core ..... 13

III. MFC's Breach of Fiduciary Duty Claim is Fatally Deficient Because it is Precluded by Delaware Law ..... 14

A. MFC Lacks Standing To Assert A Breach Of Fiduciary Duty Claim Against The Director Defendants ..... 14

B. MFC's claim against the Director Defendants for breach of the duty of care is negated by the exculpatory provisions of WRS Holdings, LLC's limited liability agreement. ..... 17

C. The Valor Entities cannot be held liable for breaches of fiduciary duty when the Director Defendants are exculpated. ..... 18

IV. MFC's Negligent Misrepresentation Claim Fails To State A Claim For Relief ..... 19

A. Illinois law should apply to the negligent misrepresentation claim. ..... 19

1. There is a substantive difference between Illinois and New Jersey law regarding the requisite elements of a claim for negligent misrepresentation. ..... 20

2. Illinois has the greater connection to MFC's negligent misrepresentation claim. ..... 21

B. MFC fails to state a claim for negligent misrepresentation. ..... 23

V. MFC's Fraud-Based Claims Fail To State A Claim For Relief ..... 23

A. Regardless of whether Illinois or New Jersey law applies, MFC fails to state a claim for fraud. ..... 24

B. The Complaint Does Not Satisfy the Particularity Requirement of Fed.R. Civ. P. 9(b) ..... 25

**TABLE OF CONTENTS**
(continued)

**Page**


C. MFC did not rely on the 2010 BBCs in making earlier advances under the loan agreements ..... 30

VI. The Complaint Fails To Overcome the Business Judgment Rule ..... 31

A. MFC's allegations do not overcome the presumption that the Director Defendants acted loyally ..... 36

1. The complaint does not allege a conflict of interest on the part of the Director Defendants. ..... 36

2. The complaint does not allege that the Director Defendants consciously disregarded any directorial duties. ..... 37

B. Plaintiffs' allegations do not overcome the presumption that the Director Defendants exercised due care ..... 39

VII. Conversion and Unjust Enrichment Claims ..... 41

A. Conversion ..... 41

B. Unjust Enrichment ..... 42

VIII. Conclusion ..... 43

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abraham v. Emerson Radio Corp.*,
901 A.2d 751 (Del. Ch. 2006)....................19

*Ashcroft v. Iqbal*,
556 U.S. 662, (2009)....................26, 27, 29

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007)....................42

*ATR-KIM Eng Fin. Corp. v. Araneta*,
2006 Del. Ch. LEXIS 215, (Del. Ch. Dec. 21, 2006)....................18

*B.S. Livingston & Co., Inc. v. Stemcor USA, Inc.*,
186 B.R. 841 (D.N.J. 1995)....................20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007)....................26, 27, 29, 36

*BMW Fin. Servs. v. Ploetner (In re Towne, Inc.,)*,
2010 Bankr. LEXIS 3768 (Bankr. D.N.J. Oct. 21, 2010)....................8

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000)....................36, 39

*Bridgestone /Firestone N. Am. Tire, LLC v. LePore*,
2007 U.S. Dist. LEXIS 92588 (D.N.J. Dec. 17, 2007)....................41

*Callano v. Oakwood Park Homes Corp.*,
219 A.2d 332 (App. Div. 1966)....................43

*Canal Capital Corp. v. French*,
1992 WL 159008 (Del. Ch. 1992)....................30

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. Ill. 2011)....................42

*Commercial Ins. Co. of Newark v. Apgar*,
111 N.J. Super. 108 (Law. Div. 1970)....................41

*Conley v. Gibson*,
355 U.S. 41 (1957)....................27, 36



#1773152 v4
110189-71024

*Continuing Creditors' Comm. v. Edgecomb*,
385 F.Supp.2d 449 (D. Del. 2004) .......... passim

*Doctors Hosp. v. Desnick*,
308 B.R. 311 (Bankr. N.D. Ill. 2004) .......... 11

*Falise v. The Am. Tobacco Co.*,
241 B.R. 48 (E.D.N.Y. 1999) .......... 8, 9, 10, 11

*Fink v. DeClassis*,
745 F. Supp. 509 (N.D. Ill. 1990) .......... 24

*Fox Assoc., Inc. v. Robert Half Int'l, Inc.*,
777 N.E.2d 603 (2002) .......... 4, 21

*Fry v. Trump,*
681 F. Supp. 252 (D.N.J. 1988) .......... 3

*Fu v. Fu*,
160 N.J. 108 (1999) .......... 19, 21, 22, 23

*Gagliardi v. Trifoods Int'l, Inc.*,
683 A.2d 1049 (Del. Ch. 1996) .......... passim

*Grimes v. Graue* (*In re Haws)*,
58 B.R. 965 (Bankr. S.D. Tex. 1993) .......... 9, 10, 11

*Halper v. Halper*,
164 F.3d 830 (3d Cir. 1999) .......... 2, 12, 13, 14

*Halvajian v. Bank of N.Y., N.A.*,
191 B.R. 56, (D.N.J. 1995) .......... 12, 13

*In Raintree Homes, Inc. v. Vill. of Long Grove,*
807 N.E.2d 439 (Ill. 2004) .......... 42

*In re BCH Communs. S'Holder Litig.*,
789 A.2d 1 (Del. Ch. 2001) .......... 17

*In re Caremark Int'l., Inc.*,
698 A.2d 959 (Del. Ch. 1996) .......... passim

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009) .......... 16

*In re Exide Techs.*,
544 F.3d 196 (3d Cir. 2008) .......... 13, 14

*In re Gen. Motors Class E Buyout Securities Litigation*,
694 F.Supp. 1119 (D. Del. 1988) ....................................................................40

*In re Lukens Inc. S'holders Litig.*,
757 A.2d 720 (Del. Ch. 1999)............................................................................18

*In re Norvergence*,
424 B.R. at 688 ..................................................................................................26

*In re Pacor*,
743 F.2d 984 (3rd Cir. 1984).........................................................................7, 9

*In re Rockefeller Ctr. Props. Secs. Litg.*,
311 F.3d 198 (3d Cir. 2002)....................................................................26, 30

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006)..............................................................................26

*In re Verestar, Inc.*,
383 B.R. 444 (Bankr. S.D.N.Y. 2006)................................................................18

*Ivanhoe Partners v. Newmont Mining Corp.*,
535 A.2d 1334 (Del. 1987)..................................................................................16

*Konover Constr. Corp. v. East Coast Construction Services Corp.*,
420 F. Supp. 2d 366 (D.N.J. 2006) ..........................................................20, 24

*Lebegern v. Forman*,
471 F.3d 424 (3d Cir. 2006)................................................................19, 20, 21

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004)..............................................................................26

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001)..................................................................................18

*Martis v. Grinnell Mut. Reinsurance Co.*,
905 N.E.2d 920 (Ill. App. Ct. 2009) ..................................................................42

*McCall v. Scott*,
239 F.3d 808 (6th Cir. 2001) ..............................................................................17

*MCG Capital Corp . v. Maginn*,
2010 Del. Ch. LEXIS 87 (Del. Ch. May 5, 2010) ..............................................16

*Miller v. Greystone Bus. Credit II, L.L.C. (In re USA Detergents, Inc.)*,
418 B.R. 533 (Bankr. D. Del. 2009)......................................................................3



#1773152 v4
110189-71024

*Moorman Mfg. Co. v. National Tank Co.*,
435 N.E.2d 443 (1982) .......... 22

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
930 A.2d 92 (Del. 2007) .......... 3, 15, 16, 31

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982) .......... 13

*Naporano Iron & Metal Co. v. American Crane Corp.*,
79 F.Supp.2d 494 (D.N.J. 2000) .......... 26, 29

*Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.)*,
428 B.R. 303 (Bankr. D. Del. 2010) .......... 3

*Pereira v. Farace*,
413 F.3d 330 (2d Cir. 2005) .......... 18

*Prods. Res. Group. L.L.C. v. NCT Group, Inc.*,
863 A.2d 772 (Del. Ch. 2004) .......... 16, 18

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) .......... 32

*Resorts Int'l Financing, Inc. v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*,
372 F.3d 154 (3d Cir. 2004) .......... passim

*Russell-Stanley Corp. v. Plant Indus. Inc.*,
595 A.2d 534 (Ch. Div. 1991) .......... 43

*Shandler v. DLJ Merch. Banking, Inc.*,
2010 Del. Ch. LEXIS 154 (Del. Ch. July 26, 2010) .......... 18

*Solow v. Northwest Airlines*,
180 B.R. 851 (Bankr. N.D. Ill. 1995) .......... 5, 22, 23

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) .......... passim

*Sun Coast Merchandise Corp. v. Myron Corp.*,
393 N.J. Super. 55 (App. Div. 2007) .......... 41

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) .......... 15

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*,
906 A.2d 168 (Del.Ch. 2006) .......... passim

*United Artist Theatre Co. v. Walton*,
315 F.3d 217 (3rd Cir. 2003) ........................................ 6

*Vichi v. Koninklijke Philips Elecs. N.V.*,
2009 Del. Ch. LEXIS 209 (Del. Ch. Dec. 1, 2009) ........................................ 15

*VWE Group, Inc. v. Amlicke (In re VWE Group, Inc.)*,
359 B.R. 441 (S.D.N.Y. 2007) ........................................ 14

*Walker v. Cadle Co. (In re Walker)*, ,
51 F.3d 562 (5th Cir. 1995) ........................................ 12

*Weinstein Enters. v. Orloff*,
870 A.2d 499 (Del. 2005) ........................................ 3, 16

*Weiss v. Temporary Investment Fund, Inc.*,
692 F.2d 928 (3rd Cir. 1982) ........................................ 33, 34

*Western States Insurance Co. v. Louis E. Olivero & Associates*,
670 N.E.2d 333 (1996) ........................................ 41

*Whittingham v. Mortg. Elec. Registration Servs.*,
*2007 U.S. Dist. LEXIS 33476 (D.N.J. May 15, 2007)* ........................................ 24, 26, 29

**Statutes**

11 U.S.C. § 362(a)(1) ........................................ 11

28 U.S.C. § 1367 ........................................ 12

28 U.S.C. § 157(b)(1) ........................................ 13

28 U.S.C. § 157(b)(2) ........................................ 13, 14

28 U.S.C. § 157(b)(2)(A) ........................................ 7

28 U.S.C. § 157(b)(2)(D) ........................................ 7

28 U.S.C. § 157(c)(1) ........................................ 13

28 U.S.C. § 157(d) ........................................ 14

8 Del.Code § 102(b)(7) ........................................ 4, 18

**Rules**

Fed. R. Bankr. P. 7009 ........................................ 4

Fed. R. Bankr. P. 7012 .......... 1

Fed. R. Civ. P. 12 .......... 27

Fed. R. Civ. P. 12(b)(1) .......... 1, 13

Fed. R. Civ. P. 12(b)(6) .......... 1, 24, 31

Fed. R. Civ. P. 8(a)(2) .......... 26

Fed. R. Civ. P. 9(b) .......... passim

Fed. R. Evid. 201 .......... 17

## PRELIMINARY STATEMENT AND INTRODUCTION

Defendants Valor Equity Partners, L.P. ("VEP"), VWR Holdings, LLC ("VWR Holdings"), Valor Management Corporation ("Valor Management", and, with VEP and VWR Holdings, "Valor Entities"), Antonio Gracias ("Gracias"), Bradley Sheftel ("Sheftel"), and Jonathan Shulkin ("Shulkin") (collectively, the "Moving Defendants"), submit this Brief in support of their Motion to Dismiss the Complaint dated February 9, 2012 ("Complaint") and filed by plaintiff MFC Capital Funding, Inc., a Minnesota corporation ("MFC"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), made applicable herein by Fed. R. Bankr. P. 7012. The Complaint should be dismissed as against the Moving Defendants because the claims alleged against the Moving Defendants in the Complaint fail to state any cognizable basis for relief under applicable state law, and the Court should determine that it lacks jurisdiction over the state law claims asserted in the Complaint under the standard enunciated by the Third Circuit in *Resorts Int'l Financing, Inc. v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004).

## I. Introduction

The Complaint's fraud, negligent misrepresentation and breach of fiduciary duty claims against the Moving Defendants are fundamentally misconceived and contravene (i) the federal principle limiting the extent of bankruptcy jurisdiction, (ii) settled Delaware law holding that MFC lacks standing to assert direct claims against the Moving Defendants for breach of fiduciary duty and the non-existence of any fiduciary duty owed by the Valor Entities to MFC, (iii) the requirement that fraud claims be pled particularly and plausibly; and (iv) the state law business judgment rule and related principles. Accordingly, those claims fail as a matter of law. As MFC's conversion and

unjust enrichment claims necessarily rely upon the viability of the foregoing deficient claims, these claims must fail as well.

Bankruptcy jurisdiction has been specifically limited by Congress, in response to the constitutional requirements of Article III of the U.S. Constitution. As a result, the Complaint's claims exist outside the reasonable limits of the Court's jurisdiction. At bottom, this case is a dispute between non-debtors that can have no effect whatsoever on the chapter 7 debtors, WRS Holdings, LLC, et al. ("Debtors" or "WRS") or the liquidation of the Debtors' estate, notwithstanding MFC's curious and unnecessary naming of the Debtors as defendants.

As a threshold matter, the Court should decline to extend bankruptcy jurisdiction over MFC's state law claims because state law claims between non-debtors can have no conceivable effect on the underlying chapter 7 case. In chapter 7, as in a post-confirmation chapter 11 case, all that is left is a winding-up and liquidation process. *See In re Resorts Int'l*, 372 F.2d 154 (At the post confirmation stage, bankruptcy jurisdiction can only be invoked for claims that affect an "integral aspect" of the bankruptcy process, and have a "close nexus" to the bankruptcy plan or proceeding); *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999) (requiring a claim by claim analysis of bankruptcy jurisdiction and rejecting the proposition that a bankruptcy court can exercise "supplemental" jurisdiction). Since no other basis for federal jurisdiction is alleged (or otherwise obtains), the Complaint as against the Moving Defendants should be dismissed in its entirety for want of subject matter jurisdiction.

MFC's claims for negligent misrepresentation (Count I) and breach of fiduciary duty (Count II) are each independently deficient as a matter of law. First, MFC has no

standing to assert breach of fiduciary duty claims against Gracias, Shulkin, and Sheftel (the "Director Defendants"), or the Valor entities by way of the Director Defendants, under controlling Delaware law.[1] The Delaware Supreme Court has specifically rejected the breach of fiduciary duty theory that MFC advances, *i.e.*, that a creditor can claim a breach of fiduciary duty by a director when the company is insolvent or in the zone of insolvency, so that MFC's claim in Count II must be dismissed with prejudice as against Gracias, Shulkin, and Sheftel (the "Director Defendants"). *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007).

Moreover, MFC's breach of fiduciary duty claims, to the extent alleged against the Valor Entities, are entirely devoid of merit. A majority shareholder of a corporate entity owes no fiduciary duty to the corporation's creditors. Under Delaware law, controlling shareholders, like directors, owe fiduciary duties only to the corporation and its minority shareholders. *Weinstein Enters. v. Orloff*, 870 A.2d 499, 507 (Del. 2005).

MFC's breach of fiduciary claim against the Director Defendants also ignores the exculpation provision in WRS Holding, LLC's limited liability company agreement. In accordance with Delaware law, that provision exculpates the Director Defendants from

---

[1] WRS Holdings, LLC, the principal borrower under MFC's loan agreements, is a Delaware limited liability company, and the entity of which the Director Defendants acted as directors. VWR Holdings, the Valor entity which owned the majority member interest in WRS Holdings, LLC and thus, indirectly, the rest of the Debtors, is a Delaware limited liability company. Gracias, Shulkin, and Sheftel are sued in their capacity as directors of WRS Holdings, LLC, and the Valor entities are sued only because VEP invested in the Debtors via WRS Holdings' majority interest in WRS Holdings, LLC. As such, MFC's flawed fiduciary duty claims relate solely to two Delaware entities, WRS Holdings, LLC and VWR Holdings.

"Under the internal affairs doctrine, only one state, the state of incorporation, has the authority to regulate a corporation's internal affairs. Few, if any, claims are more central to a corporation's internal affairs than those relating to alleged breaches of fiduciary duties by a corporation's directors and officers." *Miller v. Greystone Bus. Credit II, L.L.C. (In re USA Detergents, Inc.)*, 418 B.R. 533 (Bankr. D. Del. 2009); *Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.)*, 428 B.R. 303, 313 (Bankr. D. Del. 2010) ("The claims addressing breaches of fiduciary duties and related claims involve the internal affairs of Debtor, and the laws of the state of incorporation control."); *accord Fry v. Trump*, 681 F. Supp. 252, 255-56 (D.N.J. 1988). As a consequence, because WRS Holdings, LLC is a Delaware corporation, Delaware law applies to the claim for breach of fiduciary duty.

any liability for a breach of the duty of care. 8 Del.Code § 102(b)(7). Thus, to the extent that MFC's breach of fiduciary duty claim is predicated on the duty of care, it necessarily fails and must be dismissed for this additional reason. *Continuing Creditors' Comm. v. Edgecomb*, 385 F.Supp.2d 449, 463-464 (D. Del. 2004) (dismissing duty of care claims against directors under § 102(b)(7)); *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 194 (Del.Ch. 2006), affirmed by Order of the Delaware Supreme Court dated August 14, 2007 (same).

Likewise, MFC's deliberately ambiguous negligent misrepresentation (Count I), common law fraud (Count III) and fraud in the inducement (Count IV) claims fail to state a claim for relief. To the extent that these claims sound in fraud, the allegations are woefully deficient under Fed R. Civ. P. 9(b) (made applicable by Fed. R. Bankr. P. 7009). Among other things, scienter is nowhere alleged, nor is the scienter requirement satisfied by purporting to impute the intentional conduct of officers or employees (in supposedly issuing erroneous borrowing base certificates ("BBCs") and overstating accounts receivable) to the Director Defendants, and, derivatively, to the Valor Entities.

As for MFC's negligent misrepresentation claim, it also fails as a matter of law. Under Illinois law, which controls the negligent misrepresentation claim as discussed below, to state a claim for negligent misrepresentation, MFC must allege that the Moving Defendants were "in the business of supplying information" for the guidance of MFC in its separate business dealings with other third parties. *Fox Assoc., Inc. v. Robert Half Int'l, Inc.*, 777 N.E.2d 603, 608 (2002).

No such allegation appears in the Complaint, nor could it based upon the factual allegations set forth therein: the Director Defendants served on the board of a company

in the business (through subsidiaries) of providing restoration, remodeling, and construction services, not information. Moreover, the BBCs and other documents were used in MFC's transaction with the Debtors, not in its separate dealings with third parties. *Solow v. Northwest Airlines*, 180 B.R. 851 (Bankr. N.D. Ill. 1995) (Negligent misrepresentation claim dismissed where defendant's principal product was airline service not information, and any ancillary information provided to the plaintiff related to the transaction between the parties, and not plaintiff's dealings with third parties). Accordingly, MFC's misrepresentation claim is legally deficient and should be dismissed.[2]

Finally, Delaware's business judgment rule bars MFC's breach of fiduciary duty claims and negligent misrepresentation claims. MFC's claims against the Director Defendants are not sustainable under the business judgment rule. MFC alleges that the Director Defendants, acting on behalf of VEP, VWR Holdings and Valor Management,[3] exerted control over the Debtors' management to such a degree that the Director Defendants and "Valor" directed, were complicit in, or were negligently unaware of the alleged misrepresentations made by the Debtors' management to MFC regarding (i) the Debtors' financial condition, (ii) the $1,245,260 "Double Billing identified in the Complaint, and (iii) the alleged misrepresentations claimed by MFC to have been set

---

[2] Moreover, as discussed further below, each of MFC's fraud and misrepresentation claims fails as against the Moving Defendants because nowhere does the Complaint allege that any of these defendants, as opposed to the Debtors' officers or employees, ever made any affirmative representation or material omission to MFC.

[3] MFC's Complaint confuses the identity of the Valor entities by defining them collectively as "Valor." As acknowledged by the Complaint's Exhibit A, VWR Holdings, which is wholly owned by VEP, is the majority member of WRS Holdings, LLC, the parent company of the WRS Debtor group. Valor Management simply had a management contract with WRS, LLC f/k/a Woods Restoration Services, LLC, and holds no ownership interest in any of the Debtors. Likewise, VEP holds no direct ownership interest in any of the Debtors.

forth in the Debtors' borrowing base certificates ("BBCs") that were delivered to MFC. These allegations against the Director Defendants amount to allegations of mismanagement of the Debtors and negligent misrepresentations to MFC that the Delaware business judgment rule precludes.

Such a claim is not cognizable because it is precisely the type of hindsight accusation inviting judicial intervention in corporate decision-making that the business judgment rule precludes. *Gagliardi v. Trifoods Int'l, Inc.*, 683 A.2d 1049 (Del.Ch. 1996) (The business judgment rule proscribes "second-guessing" so as not to inhibit director action). Accordingly, even if MFC had standing to assert a fiduciary duty claim against the Director Defendants, the same is barred by the business judgment rule. MFC must plead much more than a bad business decision.

It must plead either (i) a conflict of interest on the part of *each* of the directors or a *knowing* disregard of their directorial duties (*i.e.*, a breach of the duty of loyalty), *Stone v. Ritter*, 911 A.2d 362 (Del. 2006); or (ii) an irrational and grossly deficient decision-making process (a breach of the duty of care), *United Artist Theatre Co. v. Walton*, 315 F.3d 217 (3rd Cir. 2003). MFC alleges neither (i) a conflict of interest nor (ii) a knowing disregard of directorial duties or irrational decision-making. At best, MFC alleges negligence on the part of the Director Defendants, and even that is alleged in an impermissibly conclusory fashion.

Each of these bases for dismissing the complaint as against the Moving Defendants is discussed more fully below.



#1773152 v4
110189-71024

## ARGUMENT

## II. The Court Lacks Subject Matter Jurisdiction Over MFC's Claims Against The Moving Defendants

MFC has asserted state law claims for negligent misrepresentation (Count I), breach of fiduciary duty (Count II), common law fraud (Count III), fraud in the inducement (Count IV), conversion (Count V), and unjust enrichment (Count VI) against the Moving Defendants. Incredibly, MFC alleges that these state law claims between non-debtors are "core" pursuant to 28 U.S.C. § 157(b)(2)(A) and (D) as "matters concerning the administration of the estate" and "orders in respect of obtaining credit."[4] However, MFC is a non-debtor, its claims against the non-debtor Moving Defendants sound in state law, not bankruptcy law, and the outcome of these claims neither will have any conceivable effect on the Debtors or their chapter 7 estates, nor have a close nexus therewith. As such, the Court does not have even "related to" jurisdiction over MFC's claims under *In re Pacor*, 743 F.2d 984, 994 (3rd Cir. 1984) and its progeny, much less the core jurisdiction alleged by MFC. The claims must be dismissed for want of subject matter jurisdiction.

### A. There is no "related to" jurisdiction over MFC's claims

Congress has vested only "limited authority" in bankruptcy courts, and there are "significant restrictions" on what can constitutionally be delegated to these courts. *Resorts Int'l Inc.*, 372 F.2d at 161. Therefore, any inquiry regarding bankruptcy court jurisdiction "starts with the assumption of a lack of subject matter jurisdiction. The

[4] How these claims concern the administration of the Debtors' estate is left unalleged, presumably because MFC's counsel could not, as the Moving Defendants cannot, imagine any conceivable effect that the claims have on the estate. For its part, MFC's implied allegation that this adversary proceeding somehow implicates an order relating to the Debtors' obtaining post-petition credit defies credulity.

'burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Falise v. The Am. Tobacco Co.*, 241 B.R. 48, 56 (E.D.N.Y. 1999) (citations omitted).

MFC does not, and cannot, allege any facts to overcome the presumption against jurisdiction. Instead, it needlessly names the Debtors as defendants and apparently hopes that that meaningless action transforms state law claims against non-debtors into core claims. However, MFC's claims against the Moving Defendants can have no conceivable effect on or close nexus with the bankruptcy case and is appropriately viewed as a suit between non-debtors. MFC's allegations do not establish related to jurisdiction, much less core jurisdiction, and thus fall far short of establishing subject matter jurisdiction over its claims.[5]

To begin with, because MFC's claims are being asserted in a chapter 7 liquidation case, the Court should apply the same jurisdictional analysis it applies to post-confirmation chapter 11 cases. The two scenarios are analogous because they involve a winding-up of the debtor's affairs. *See BMW Fin. Servs. v. Ploetner (In re Towne, Inc.,),* 2010 Bankr. LEXIS 3768, at *11 (Bankr. D.N.J. Oct. 21, 2010) (cases on post-confirmation jurisdiction instructive in the chapter 7 context). The post-confirmation analysis is more constricted than is the case with pre-confirmation claims. *Resorts Int'l Inc.*, 372 F.3d at 164 n. 7 (Bankruptcy courts have "jurisdiction over a narrower range of cases post-confirmation than pre-confirmation."). This is because, post-confirmation, a debtor's estate ceases to exist, and cannot be affected by a post-confirmation dispute. *Id.* at 165. With the shrinkage of the scope of the bankruptcy proceeding comes a

---

[5] One consequence of MFC's attempt to invoke bankruptcy jurisdiction is that it gives MFC access to nationwide in-personam jurisdiction, thereby enabling MFC to drag the Director Defendants into New Jersey, where there would otherwise be no personal jurisdiction over them, none of whom reside in New Jersey.

corresponding shrinkage in the bankruptcy court's jurisdiction. *Id.* at 168. ("[T]he jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan.").

As a result, the Third Circuit in *Resorts* held that a bankruptcy court has subject matter jurisdiction over a post-confirmation dispute only if the claim "affect[s] an integral aspect of the bankruptcy process – there must be a close nexus to the bankruptcy plan or proceeding." *Id.* at 167. In articulating this "close nexus" standard, the Third Circuit narrowed the somewhat more expansive test for "related to" jurisdiction under *In re Pacor*, 743 F.2d at 994 (whether the outcome of that proceeding could "conceivably" have any effect on the bankruptcy estate), which had been formulated in the context of a pre-confirmation proceeding. *Id.* at 166.

*Resorts*, and two of the cases relied on therein[6], succinctly illustrate when a post-confirmation proceeding lacks a sufficiently close nexus to the bankruptcy estate or case to sustain jurisdiction. In *Resorts*, a litigation trust established under the debtor's confirmed chapter 11 plan brought an adversary proceeding against an accounting firm

---

[6] *Grimes v. Graue* (*In re Haws*), 158 B.R. 965 (Bankr. S.D. Tex. 1993). Liquidating trustee asserted breach of fiduciary duty claims against partner of debtor, arguing that since he was appointed under the confirmed plan to prosecute this claim, a sufficient connection with the bankruptcy had been shown to warrant related to bankruptcy jurisdiction. Court rejected the argument and dismissed the proceeding for lack of subject matter jurisdiction, because (i) claim had not been asserted until after the plan had been confirmed and the bankruptcy case closed; (ii) claim did not involve bankruptcy law; (iii) the court was not being asked to construe the bankruptcy plan; and (iv) fact that a recovery by the trustee would increase the assets of the trust does not effect the implementation of the plan, only the ultimate amount available to the trust beneficiaries. *Id.* at 970-71.

*Falise*, 241 B.R. at 56. Dispute between tobacco manufacturers and a trust created as a result of the bankruptcy of a manufacturer of asbestos products. Trust sought to recover from tobacco companies for contributing to asbestos-related illnesses for which the debtor had been deemed responsible. 241 B.R. at 51. Conclusion: bankruptcy jurisdiction did not extend to this post confirmation suit. *Id.* at 52. Neither the debtor nor its estate were involved. *Id.* at 57-58. Further, the fact that a recovery could increase the assets available for distribution "insufficient to create jurisdiction." *Id.* at 58. Otherwise, bankruptcy jurisdiction would basically extend to "any lawsuit involving a post-bankruptcy trust," in direct contravention of Article III of the Constitution. *Id.* at 61.

that had provided the trust with tax advice and accounting services, alleging malpractice. The Third Circuit held that the claims asserted by the trust did not come within the post-confirmation "related to" jurisdiction of the bankruptcy court because the claim did not "affect an integral aspect of the bankruptcy process" and there was not a "close nexus to the bankruptcy plan or proceeding." *Resorts Int'l Inc.*, 372 F.3d at 167.

The trust's claims did not affect the "interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.* Further, resolution of the malpractice claims would "not affect the estate; [would] have only incidental effect on the reorganized debtor; [and would not] interfere with implementation of the Reorganization Plan." *Id.* at 169. The Court further found that while resolution of the claims might increase the trust's assets, and therefore "would affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to the bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims." *Id.*

The connection of MFC's claims against the Moving Defendants to the Debtors' bankruptcy proceeding is even more remote than the asserted connections found to be insufficient in *Resorts*, *Falise* and *Grimes*. MFC, a non-debtor, is asserting individual state law claims against non-debtor third parties. MFC has filed a proof of claim against the Debtors for the amounts sought in the Complaint, so that MFC's naming the Debtors as defendants appears to be a ploy to somehow seek invocation of bankruptcy jurisdiction against all defendants, possibly by way of supplemental jurisdiction. However, it is settled that the Bankruptcy Court cannot exercise supplemental jurisdiction over MFC's claims against the Moving Defendants, discussed below, even if

MFC establishes a legitimate reason for suing the Debtors in this adversary proceeding.[7]

Stated otherwise, MFC is merely a litigant asserting garden variety state law pre-petition claims against the Moving Defendants. These are claims that could have been brought in a state court of general jurisdiction, whether or not the chapter 7 case was filed. *See Falise*, 241 B.R. at 61 ("had bankruptcy litigation never taken place, nothing would have prevented" plaintiff from pursuing its claims "outside of the context of bankruptcy"). MFC's claims are even more remote than those asserted in *Resorts*, *Falise* and *Grimes*: MFC did not obtain its asserted rights by assignment from the debtor in the course of the bankruptcy, but through its own direct dealings with the WRS Debtors' management.

Instead, this is a "dispute essentially collateral to the bankruptcy case" and wholly unrelated thereto. *Resorts Int'l Inc.*, 372 F.3d at 167. While MFC's secured lending relationship with the Debtors may "provide the context of the case[,] this bare factual nexus is insufficient to confer bankruptcy jurisdiction." *Id.* at 167, 170. The mere fact that a recovery on a creditor's claims against a non-debtor might reduce the amount of a creditor's claim against the debtor does not establish "related to" jurisdiction over non-debtor claims. *Doctors Hosp. v. Desnick*, 308 B.R. 311 (Bankr. N.D. Ill. 2004). As such, subject matter jurisdiction over MFC's claims simply does not exist.

---

[7] MFC did not seek stay relief to name the Debtors as defendants in this litigation. The Moving Defendants note that 11 U.S.C. § 362(a)(1) requires stay relief in order to pursue such pre-petition claims against the Debtors. Thus, the Debtors do not appear to be properly named as defendants and the Court should view the dispute as merely one between non-debtor parties.

**B. <u>There is no supplemental jurisdiction over MFC's claims</u>**

The Court cannot exercise supplemental jurisdiction over MFC's claims. 28 U.S.C. § 1367, which invests district courts with supplemental jurisdiction over certain claims, does not apply to bankruptcy courts.[8] *See Halvajian v. Bank of N.Y., N.A.*, 191 B.R. 56, (D.N.J. 1995). In rejecting application of supplemental jurisdiction in bankruptcy cases, the *Halvajian* court followed the reasoning of the Fifth Circuit in *Walker v. Cadle Co. (In re Walker),* 51 F.3d 562 (5th Cir. 1995):

> Conferral of jurisdiction over matters that are 'related to' and 'arising in' a bankruptcy proceeding 'already allow[s] bankruptcy courts to hear, to the extent Congress intended, all supplemental claims that have a logical relationship to an underlying bankruptcy proceeding. Supplemental jurisdiction would disrupt the carefully calibrated jurisdictional grant Congress prescribed and allow bankruptcy courts to hear cases only tenuously connected to the central controversy – essentially, cases that are supplemental to cases 'related to' or 'arising in' the primary case. Like the Fifth Circuit, this Court considers it 'unlikely that Congress would have intended such a result, especially after carefully delineating bankruptcy jurisdiction in § 157.

*Halvajian*, 191 B.R. at 59.

The Third Circuit's decision in *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999), is consistent with the logic of *Walker* and *Halvajian*. In *Halper*, the sole shareholder of the debtor corporation asserted a mixture of core and non-core claims in an adversary proceeding. *Id*. at 832-33. The bankruptcy and district courts determined that the entire proceeding could be treated as a core proceeding because the core aspect heavily predominated. *Id*. at 839. The Third Circuit rejected that approach, adopting instead a

---

[8] 28 U.S.C. § Section 1367 provides in pertinent part that ". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . ."

"claim-by-claim approach as the only one consistent with *Marathon*."[9] *Id.* In other words, the *Halper* court found that the bankruptcy court had tried to exercise a kind of supplemental jurisdiction over non-core claims, which the Constitution proscribes.

Here, this Court lacks related to jurisdiction to hear MFC's claims, much less the core jurisdiction alleged by MFC, and under *Halvajian* and *Halper*, is precluded from exercising supplemental jurisdiction over those claims. Accordingly, MFC's claims, based solely on state law, involving only non-debtors, implicating no federal interest, and lacking any nexus to the WRS bankruptcy, should be dismissed for want of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### C. Alternatively, the Court should determine that MFC's claims are non-core

28 U.S.C. § 157 distinguishes between "core" bankruptcy proceedings and "non-core" proceedings: "Bankruptcy judges may hear and determine" proceedings referred to them that are identified by the statue as "core," subject to ordinary standards of appellate review. 28 U.S.C. § 157(b)(1). However, in a proceeding that is "not a core proceeding," only a district court may enter a final judgment. 28 U.S.C. § 157(c)(1).

Courts in this circuit apply a two-step analysis to determine whether a proceeding is core or non-core. The first step is to look at the list of core proceedings listed in 28 U.S.C. § 157(b)(2). *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008). The next step is to perform a two-pronged test, under which "a claim will be deemed core 'if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its

[9] In *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), the Supreme Court held that the 1978 Bankruptcy Reform Act was unconstitutional because its conferred overly expansive judicial power on Article I bankruptcy courts, in violation of Article III and the separation of powers doctrine.

nature, could arise only in the context of a bankruptcy case.'" *Id.* (quoting *Halper,* 164 F.3d at 836.

Here, none of MFC's claims fall within 28 U.S.C. § 157(b)(2), nor do they invoke any substantive rights provided by title 11. It is equally clear that none of the claims could arise only in the context of the Debtors' bankruptcy case. As against the Moving Defendants, the plaintiff seeks relief solely under state law claims based on the alleged conduct of non-debtor defendants. As outlined above, such claims are not even "related-to" claims, much less core. At most, these claims are non-core and merely related to these chapter 7 cases, and if the Court does not dismiss the Complaint outright for lack of jurisdiction, the Court should make such a determination.

Further, the district courts have the authority to withdraw the reference to the bankruptcy court under 28 U.S.C. § 157(d) "for cause shown." In an abundance of caution, in light of the case law requiring motions for withdrawal of the reference to be filed "as promptly as possible," *see VWE Group, Inc. v. Amlicke (In re VWE Group, Inc.),* 359 B.R. 441, 446-47 (S.D.N.Y. 2007), and with an eye towards preserving the Moving Defendants' right to a jury trial, the Moving Defendants are filing a motion to withdraw the reference concurrently herewith.[10]

## III. MFC's Breach of Fiduciary Duty Claim is Fatally Deficient Because it is Precluded by Delaware Law

### A. MFC Lacks Standing To Assert A Breach Of Fiduciary Duty Claim Against The Director Defendants

The Supreme Court of Delaware has held that "creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter

[10] The Moving Defendants are filing the motion to withdraw the reference with the understanding that the District Court will likely keep the action in this Court for pre-trial stages, and do not have any objection to this Court presiding over the matter until such time as withdrawal may become necessary.

of law, to assert direct claims for breach of fiduciary duty against the corporation's directors." *Gheewalla*, 930 A.2d at 94 ("[T]he creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against the corporation's directors."); see also *Trenwick,* 906 A.2d 168 (Delaware Supreme Court affirmed the Court of Chancery's decision dismissing similar deepening insolvency fiduciary duty claims asserted by a creditor).[11]

The test for determining whether a suit is derivative or direct turns "solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing [creditors], individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the [creditors], individually)?" *Vichi v. Koninklijke Philips Elecs. N.V.*, Civ. Action No. 2578-VCP, 2009 Del. Ch. LEXIS 209 (Del. Ch. Dec. 1, 2009) (*quoting Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)). In *Vichi*, the court held that the action was direct rather than derivative because the creditor was the one who suffered the harm and would receive the benefit of any remedy. *Id* (a creditor "is barred as a matter of law from bringing such a direct claim for breach of fiduciary duty," therefore, the claim should be dismissed).

Here, MFC alleges that WRS Holdings, LLC is a Delaware corporation (Complaint ¶ 8), and that MFC is a creditor of WRS Holdings, LLC. (Complaint ¶ 4) MFC also alleges that WRS Holdings, LLC "entered the zone of insolvency in 2010," and on that basis alleges that the Director Defendants owed "an enhanced duty of care" to MFC. (Complaint ¶ 65). In *Trenwick*, 906 A.2d at 174, the Delaware Chancery Court

---

[11] As set forth in Footnote 1, above, Delaware law plainly applies to MFC's breach of fiduciary duty claims.

held that "[p]ut simply, under Delaware law, 'deepening insolvency is no more a cause of action when a firm is insolvent that a cause of action for 'shallowing profitability' would be when a firm is solvent. . . . Refusal to embrace deepening insolvency as a cause of action is required by settled principles of Delaware law." MFC has plainly alleged itself straight into the teeth of the *Gheewalla* and *Trenwick* holdings that no such fiduciary duty exists, and its direct claim for breach of fiduciary duty against the Director Defendants is barred "as a matter of law." *Gheewalla,* 930 A.2d at 94.[12]

As indicated above, MFC's breach of fiduciary duty claims, to the extent alleged against the Valor Entities, are entirely devoid of merit. A majority shareholder of a corporate entity owes no fiduciary duty to the corporation's creditors. Under Delaware law, controlling shareholders, like directors, owe fiduciary duties only to the corporation and its minority shareholders. *See, e.g., Weinstein Enters. v. Orloff*, 870 A.2d 499, 507 (Del. 2005); *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987). *See also Prods. Res. Group. L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 790 (Del. Ch. 2004) (Controlling shareholders and directors do not generally owe fiduciary duties to a corporations' creditors). Here, VWR Holdings is simply a majority member of WRS Holdings, LLC. (Complaint ¶ 7). VEP owns VWR Holdings, but does not own a direct interest in any Debtor. Valor Management, for its part, is a mere contract counterparty with WRS Holdings, LLC that owns no interest, direct or otherwise, in any Debtor. For its part, the Complaint fails to allege any relationship between VEP and Valor

---

[12] Even if MFC were asserting derivative claims (which it is clearly not), the Complaint is procedurally deficient because MFC did not: (1) make a pre-suit demand on the Debtors or the Trustee to bring the claims and subsequently demonstrate that the Debtors or the Trustee wrongfully refused to do so, or (2) plead facts showing that a demand would have been futile. *See MCG Capital Corp . v. Maginn,* 2010 Del. Ch. LEXIS 87 (Del. Ch. May 5, 2010) (*quoting In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009)).

Management, on the one hand, and the Debtors on the other. As such, none of the Valor Entities can be held to owe any fiduciary duty to MFC.

**B. MFC's claim against the Director Defendants for breach of the duty of care is negated by the exculpatory provisions of WRS Holdings, LLC's limited liability agreement.**

Even if MFC had standing to assert a breach of fiduciary duty claim as a creditor's derivative claim acting on behalf of the Debtors, and even if its conclusory allegations were somehow sufficient to plead a breach of the duty of care, the exculpation provision in WRS' limited liability company agreement expressly bars the claim. As such, the claim is not actionable as a matter of law. "Section 102(b)(7) of the Delaware General Corporation Law allows corporations to adopt a provision in their charters to exculpate directors from breaches of the duty of care." *Edgecomb*, 385 F.Supp.2d at 462-463. Consistent therewith, WRS Holdings, LLC's limited liability company agreement provides for the complete exculpation of a director's liability for breach of the duty of care: "No Board Representative or officer shall be liable to . . . the Company or to any . . . Member for any loss suffered by the Company unless such loss is caused by such Board Representative of officer's willful misconduct, [or] knowing violation of law . . . ." *See* WRS Holdings, LLC's Amended and Restated Limited Liability Company Agreement ("LLC Agreement"), Certificate of Formation, and Board of Directors' Consent to name change, copies of which are attached hereto as Exhibit A - LLC Agreement, Article X.[13]

As a result, MFC's fiduciary claims, and all allegations in furtherance thereof, to the extent they purport to allege any breaches of the duty of care by the Director

[13] The Court may properly take judicial notice of this Agreement under Fed. R. Evid. 201 without converting the motion to dismiss into one for summary judgment. *McCall v. Scott*, 239 F.3d 808, 814 n.3, 818 (6th Cir. 2001) (*In re BCH Commc'ns. S'Holder Litig.*, 789 A.2d 1, 9 n.14 (Del. Ch. 2001).

Defendants, have been abrogated. For this reason alone, all such duty of care allegations must be dismissed. *Edgecomb*, 385 F.Supp.2d at 463 ("'[P]roperly raising the existence of a valid exculpatory . . . provision in the corporate charter entitles director [defendants] to dismissal of any claims for [monetary] damages against them that are based solely on alleged breaches of the board's duty of care.'"); *In re Verestar, Inc.*, 383 B.R. 444, 473 (Bankr. S.D.N.Y. 2006) (dismissing creditor committee's duty of care allegations against the director defendants pursuant to debtor's exculpation provision);[14] *Malpiede v. Townson*, 780 A.2d 1075, 1093-94 (Del. 2001) (dismissing duty of care claims pursuant to Section 102(b)(7)); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999) (To effectuate the purposes of § 102(b)(7), abrogated claims should be dismissed as soon as possible so that the affected director does not "hav[e] to engage in discovery").

**C. The Valor Entities cannot be held liable for breaches of fiduciary duty when the Director Defendants are exculpated.**

The premise of controlling stockholder fiduciary responsibility is to hold the controller liable for actions it causes using its control of the company's board, *see, e.g., ATR-KIM Eng Fin. Corp. v. Araneta*, 2006 Del. Ch. LEXIS 215, at *16 (Del. Ch. Dec. 21, 2006). Therefore, liability under this theory is largely coextensive with the liability faced by the corporation's directors. *Shandler v. DLJ Merch. Banking, Inc.*, 2010 Del. Ch. LEXIS 154, at *59-60 (Del. Ch. July 26, 2010). That is, a controlling stockholder cannot be held liable for a breach of the duty of care when the directors are exculpated. *Id.*

---

[14] Exculpation provisions, such as the one in WRS Holdings LLC's limited liability company agreement, apply with equal force to creditors and bankruptcy trustees. *See Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 793 (Del. Ch. 2004); *Edgecomb*, 385 F. Supp. 2d at 463; *In re Verastar, Inc.*, 383 B.R. at 473; *see also Pereira v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005) (holding that exculpatory clause in Certificate of Incorporation prevented bankruptcy trustee from bringing due care claims).

(*citing Trenwick*, 906 A.2d at 194; *Abraham v. Emerson Radio Corp.*, 901 A.2d 751, 759 (Del. Ch. 2006)). Accordingly, MFC's claim for breach of fiduciary duties against VWR Holdings, the majority shareholder of WRS Holdings, LLC, must fail for the same reasons the claim fails against the Director Defendants. As against VEP and Valor Management, the claim must fail because these entities do not hold any equity stake in WRS Holdings, LLC or the other Debtors - the Complaint fails to make any such allegation - and, as such, there is simply no legal basis for MFC's claim.

## IV. <u>MFC's Negligent Misrepresentation Claim Fails To State A Claim For Relief</u>

MFC's negligent misrepresentation claim should be dismissed because it is wholly devoid of the factual allegations necessary to state a claim. In addition, MFC does not identify which state's substantive law applies to the claim. As demonstrated below, MFC's negligent misrepresentation claim against the Director Defendants and the Valor Entities, all of whom are Illinois residents, is governed by Illinois law, and MFC has failed to allege the requisite elements of the claim.

### A. <u>Illinois law should apply to the negligent misrepresentation claim.</u>

Before the substance of MFC's claim for negligent misrepresentation can be addressed, the preliminary choice of law issue must be resolved. MFC does not specify what law it contends should governs its misrepresentation claim, although "[t]here is a presumption that the law of the situs state applies." *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). However, under New Jersey law, "New Jersey's status as the forum state is irrelevant to the choice of law." *Fu v. Fu*, 160 N.J. 108, 130 (1999). Rather, under New Jersey's conflicts of laws principles, Illinois law should apply to MFC's negligent misrepresentation claim.

"A federal court must look to the forum state's choice of law principles to determine the appropriate state law to be employed." *B.S. Livingston & Co., Inc. v. Stemcor USA, Inc.*, 186 B.R. 841, 863 (D.N.J. 1995). According to the Third Circuit:

> New Jersey has a flexible governmental-interest approach to resolving choice of law questions that 'requires application of the law of the state with the greatest interest in resolving the particular issue' . . . The governmental interest test consists of two prongs. First, [a court] must determine whether there is an actual conflict . . . The second prong of the governmental-interest test requires [the court] to assess the interests each state has in applying its own law and determine which state has the most significant relationship to the parties and the event.

*Lebegern*, 471 F.3d at 428.[15]

**1. There is a substantive difference between Illinois and New Jersey law regarding the requisite elements of a claim for negligent misrepresentation.**

The requisite elements of a claim for negligent misrepresentation differ between Illinois and New Jersey law. Under New Jersey law, "[t]o establish a claim for negligent misrepresentation a plaintiff must show 'an incorrect statement, negligently made and justifiably relied on,' which results in an economic loss.'" *Konover Construction Corp. v. East Coast Construction Services Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (citations omitted).

By contrast, Illinois law only allows recovery where the defendant "is in the business of supplying information for the guidance of others in their business

[15] Alternatively, under New Jersey choice of law analysis for tort claims, the New Jersey Supreme Court applies the Second Restatement's most significant relationship standard. *P.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). This standard requires the court to apply the law of the state where the injury occurred unless another state has a more significant relationship to the parties and issues. *Id.* Here, the plaintiff, an Illinois resident, alleges that the Moving Defendants, also Illinois residents, made negligent misrepresentations. Both the alleged injury to plaintiff and the place where those alleged misrepresentations were made occurred in Illinois. Thus, Illinois law applies to the negligent misrepresentation claim.

transactions [and] makes negligent representations." *Fox Assocs. v. Robert Half Int'l, Inc.*, 777 N.E.2d 603, 606 (2002) (affirming dismissal of plaintiff's negligent misrepresentation claim because plaintiff failed to allege that defendant was in the business of supplying information, as opposed to a tangible product or service). Given this much more stringent requirement, the Illinois law of negligent misrepresentation is in direct conflict with New Jersey law, thereby necessitating a choice of law analysis.

**2. Illinois has the greater connection to MFC's negligent misrepresentation claim.**

New Jersey has articulated five broad factors to aid courts in applying its "governmental-interest" choice of law analysis. *Lebegern*, 471 F.3d at 428. Those factors include: "(1) interstate comity, (2) the interests of the parties, (3) the interests underlying the substantive body of law, (4) the interests of judicial administration, and (5) the competing interests of the states." *Id.* at 428-29.

Analyzing those factors in turn, it is clear that Illinois has the greater interest in resolving this dispute.

***Comity***. "The interests of interstate comity require courts to consider whether application of a competing state's law would frustrate the policies of other interested states." *Fu,* 160 N.J. at 122. Here, New Jersey's governmental interest is the uniform application of its negligent misrepresentation law to protect its citizens. But given that MFC has not alleged that it is a citizen of New Jersey, New Jersey's interests would not be impacted by application of Illinois law.

***Interests of the parties***. MFC's Complaint gives no indication of any reliance on the application of New Jersey law, but alleges that all three of the Director Defendants reside in Illinois (Complaint ¶¶ 17-20), and that VEP and Valor Management



#1773152 v4
110189-71024

both have their principal place of business in Illinois (Complaint ¶¶ 5-6). VWR Holdings shares offices with the other Valor entities in Illinois. The Moving Defendants thus could reasonably have expected Illinois would apply to any tort claims against them.

***Interests underlying the substantive body of law***. Illinois law limits the scope of actionable negligent misrepresentation in order to advance its important policy considerations regarding the misuse of tort law to recover for economic loss. Under its *Moorman* doctrine, the remedies for economic loss are strictly confined to contract-based claims. *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 451-52 (1982). Only narrow exceptions for tort claims are allowed-- such as negligent misrepresentation, which is subject to strict limitations, i.e., the defendant must be in the business of supplying information for the guidance of the plaintiff in its business transactions with third parties. *Solow*, 180 B.R. at 975. Failure to apply Illinois law here would undermine this significant interest.

***Interests of judicial administration***. In terms of "predictability and uniformity of result and the ease in determination and application of the choice of law" (*Fu*, 160 N.J. at 136), New Jersey and Illinois have equal interest in having their law applied.

***Competing interests of the states***. MFC has not alleged any vested interest that New Jersey would have in deciding this action. Other than alleging that some of the debtor entities had their principal places of business in New Jersey (Complaint, ¶¶ 8, 10-15), MFC alleges no facts to establish a connection between this dispute and New Jersey. None of the Moving Defendants reside in New Jersey, but instead reside in Illinois. (Complaint, ¶¶ 16-19, 21) Therefore, any alleged wrongdoing, including misrepresentations, necessarily emanated from Illinois.

Given Illinois' significant relationship to the alleged misrepresentations, and New Jersey's lack of any such relationship, Illinois law should apply to MFC's negligent misrepresentation claim. *Fu*, 160 N.J. at 139 ("when the interest of the forum in the determination of an issue is minimal and a 'foreign state has a real interest in having its law apply to rights and liabilities of parties to an event which [allegedly] occurred within its borders, this Court has recognized that sound principles of comity often require the application of the foreign state's law to a suit brought in the courts of this State.").

**B. MFC fails to state a claim for negligent misrepresentation.**

Nowhere in its Complaint does MFC allege that the Moving Defendants were "in the business of supplying information for the guidance of others in their business transactions." *Fox*, 777 N.E.2d at 606. Nor does MFC allege that any information it did receive was for its use in its separate business dealings with third parties. *Solow*, 180 B.R. at 976. The absence of these allegations is fatal to MFC's claim. *Fox*, 777 N.E.2d at 610 (dismissing negligent misrepresentation claim; *Solow*, 180 B.R. at 977 (same).

## V. MFC's Fraud-Based Claims Fail To State A Claim For Relief

MFC's negligent misrepresentation (Count I), common law fraud (Count III) and fraud in the inducement claims (Count IV), irrespective of whether they are governed by the law of New Jersey or Illinois, clearly fail to meet the fact specific pleading requirements of Fed. R. Civ. P. 9(b). Moreover, the Complaint fails to satisfy the reasonable reliance element of fraud claims with respect to monies advanced by MFC to the Debtors prior to MFC's receipt of the Debtors' allegedly misleading BBCs and other allegedly false information in 2010: MFC cannot under any set of circumstances claim that it was defrauded into making loans and advances in 2009 and earlier by misrepresentations claimed to have been made in 2010. As a consequence, Counts I,



#1773152 v4
110189-71024

III and IV should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Regardless of whether Illinois or New Jersey law applies, MFC fails to state a claim for fraud.

Counts I, III and IV of the Complaint set forth claims for "negligent misrepresentation," "common law fraud" and "fraud in the inducement." Notably, MFC grounds all three claims in a fraudulent misrepresentation theory. *See* Complaint, ¶¶ 76, 87, 92: "Defendants misrepresented and/or failed to disclose accurately to MFC material facts concerning WRS BBCs, the inaccuracy of its accounts receivable balances, and the Double Billing."

The elements of a fraudulent misrepresentation claim under New Jersey law are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Konover Constr. Corp. v. East Coast Constr. Services Corp.*, 420 F. Supp. 2d 366, 370 (D. N.J. 2006). The elements are identical under Illinois law. *Fink v. DeClassis*, 745 F. Supp. 509, 513 (N.D. Ill. 1990) (listing same elements). Thus, no choice of law analysis is necessary. Whether this Court applies New Jersey or Illinois law to MFC's fraud and fraudulent misrepresentation claims, the outcome is the same: dismissal is mandated under Fed. R. Civ. P. 12(b)(6) for failure to allege sufficient facts to meet the specificity requirements of Fed. R. Civ. P. 9(b). *Whittingham v. Mortg. Elec. Registration Servs., 2007 U.S. Dist. LEXIS 33476, *14 (D.N.J. May 15, 2007)* (Dismissing misrepresentation claim for failure to comply with Fed. R. Civ. P. 9(b): "The Court construes a claim of 'intentional misrepresentation' as one for fraud.")



#1773152 v4
110189-71024

MFC's fraud claims fail because (i) MFC fails to allege the necessary scienter element, i.e., that the Moving Defendants individually, specifically and knowingly made a false representation. As stated above, even MFC's negligent misrepresentation claim relies upon an allegation that all "Defendants" collectively made false representations or failed to disclose material facts.

The scienter element is not satisfied by attempts to impute the conduct of the Debtors' officers and employees to the Director Defendants, much less to the Valor Entities. *Stone*, 911 A.2d at 372 (Because the board does not involve itself in the day to day operations of the business, failure of non-director employees to file proper reports with the government is not attributable to directors unless the directors had actual knowledge of the failure); *In re Caremark Int'l., Inc.*, 698 A.2d 959, 968 (Del. Ch. 1996 (Most of the decisions a corporation makes are not the subject of director attention and cannot be attributed to the directors for liability purposes absent intentional misconduct on the part of the directors).

MFC attempts to skirt the scienter requisite by alluding to the supposed control that the Valor entities and the Director Defendants allegedly exercised over the Debtors' affairs. Those allegations are merely conclusory and in no way approach a concrete allegation that the Director Defendants, much less the Valor Entities, had actual knowledge of or role in the Debtors' delivery of false information to MFC.

**B. The Complaint Does Not Satisfy the Particularity Requirement of Fed.R. Civ. P. 9(b)**

Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b) serves to give defendants "notice of the claims against them, provide[ ] an

increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006). The Third Circuit furthers that goal by requiring plaintiffs to "plead with particularity the circumstances of the alleged fraud by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004); *In re Rockefeller Ctr. Props. Secs. Litg.*, 311 F.3d 198, 217 (3d Cir. 2002) (answering the "who, what, when, where and how" questions will satisfy the 9(b) requirement).

Further, Fed. R. Civ. P. 9(b) does not permit plaintiffs to "merely lump multiple defendants together but requires [the complaint to] . . . inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *In re Norvergence,* 424 B.R. at 688. "Pleadings containing collectivized allegations against 'defendants' do not suffice" to satisfy the requirement of Fed. R. Civ. P. 9(b). *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F.Supp.2d 494, 511 (D.N.J. 2000); *see also Whittingham,* 2007 U.S. Dist. LEXIS 33476 at *15 (Plaintiffs should "allege with specificity <u>who</u> made the relevant misrepresentations.") (quoting *Lum,* 361 F.3d at 224).

In 2007 and 2009, the United States Supreme Court further refined and tightened these pleading requirements in two landmark cases: *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly*, the Supreme Court addressed the general pleading standard set forth in Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court held that plaintiffs must allege fact "plausibly



#1773152 v4
110189-71024

suggesting" an actionable claim, and that mere conclusory allegations of actionable conduct are insufficient. *Twombly*, 550 U.S. at 557. Put another way, under Fed. R. Civ. P. 12, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

In *Iqbal*, the Supreme Court reiterated the plausibility requirement enunciated in *Twombly*, and stated that "the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1949. The Court set forth a two-pronged approach for determining plausibility: first, a court should identify allegations that are mere conclusions and are thus not entitled to an assumption of truth and, second, analyze the remaining well-pleaded allegations and determine if the same plausibly ground a claim for relief. *Id.* at 1950. Accordingly, the Supreme Court has rejected the old "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), stating that that standard has "earned its retirement." *Twombly*, 550 U.S. at 563.

Given the wholly conclusory nature of MFC's fraud allegations, the same should be rejected out of hand under *Iqbal*. For instance, MFC alleges that "Valor, by and through the Directors and Officers, exercised full control over WRS' financial affairs, operations, business planning and reporting obligations to MFC . . . ." (Complaint, ¶ 43). In making this allegation, MFC fails utterly to identify (i) how the Valor entities are claimed to have exercised control, and specifically, how the Valor entities dictated the Debtors' financial reporting to MFC; (ii) who - other than the generalized "Directors and Officers" - is supposed to have exercised control; (iii) what specific decisions were made



#1773152 v4
110189-71024

by the Debtors as a result of this alleged control; and (iv) when and where any of this is supposed to have happened.

Each of these misrepresentation claims fails against the Director Defendants and the Valor Entities because nowhere does the Complaint allege that these defendants, as opposed to the Debtors' officers or employees, ever made any misrepresentation of any nature to MFC. MFC attempts to plead around this deficiency - occasioned by the fact that no such misrepresentations were ever made by the Moving Defendants- by espousing the theory of Valor's control and dominance over the Debtors that is alleged in ¶ 43 of the Complaint and debunked above.

MFC goes on to allege that the Defendants defrauded MFC by the following generalized allegations:

- The Debtors "by and through their respective Directors and Officers . . . negligently misrepresented the stated amount of their accounts receivable by inflating their value by at least $1,245,260 on the BBCs present to MFC pursuant to the Loan Documents (the 'Double Billing')" (Complaint, ¶ 44). MFC fails to allege how the Moving Defendants had knowledge of this overstatement or were active in making any representation regarding the Double Billing. None of the BBCs were prepared or executed by the Director Defendants, and MFC fails to allege that the Director Defendants had any knowledge of the content of the BBCs and if so, how that knowledge was acquired.

- "Without informing MFC prior to the Petition Date, WRS reversed not less than $1,245,260 in pre-petition Double Billing . . .") (Complaint, ¶ 45). The Complaint is entirely devoid of any allegation that the Moving Defendants had any knowledge of or involvement in this accounting reversal.

- "WRS has blamed the Double Billing on problems encountered in the transition to the new Timberline accounting system, despite the fact that Valor and WRS knew for months prior to the Petition Date that the information it was obtaining from and thereafter reporting to MFC on its BBCs was inaccurate . . ." (Complaint, ¶ 50). MFC fails to allege how the Director Defendants or the Valor Entities "knew for months" that the accounting system was rendering inaccurate information, who provided that information, and when, where and how it was allegedly provided.



#1773152 v4
110189-71024

- "WRS (by and through Valor and its Officers and Directors) misrepresented the status of the company's transition to the Timberline system, misleading MFC into the alleged erroneous belief that no such problems existed. . . " (Complaint, ¶ 56). While the Complaint does specifically allege that Shulkin and Wasielewski stated that the old accounting system's and Timberline's data had "successfully melded" and that the Debtors were "on track" for a January 2010 closing using Timberline, that allegation fails to allege, as it cannot, that Shulkin, Wasielewski, or any other Defendant somehow also assured MFC that the accounting information was going to be accurate.

- "WRS deposited more than $534,000 of MFC's cash collateral into an account at First Jersey Credit Union . . . without prior notice to or the consent of MFC . . ." (Complaint, ¶ 59). The Complaint is entirely devoid of any allegation that the Moving Defendants had any involvement in or knowledge of this alleged act, or, if so, who, when, where or how that occurred.

- "[I]mmediately prior to the Petition Date, WRS arranged for the payment of not less than $252,949.11 in past-due, pre-bankruptcy withholding taxes." (Complaint, ¶ 62). Again, the Complaint is devoid of any allegation that the Moving Defendants had any involvement in or knowledge of this alleged act, or, if so, who, when, where or how that occurred.

While the Complaint does provide some anecdotal details supporting certain of the fraud conclusions, the same are insufficient to sustain the broad, collectivized fraud claimed by MFC to have been perpetrated upon it by the Director Defendants, the Valor Entities, and all of the Debtors' officers and employees. This is specifically the sort of conclusory pleading that *Twombly* and *Iqbal* reject, so that the fraud allegations should be determined to fail the plausibility test mandated by those precedents. "Such imprecise pleading is not adequate under the heightened pleading requirements of Rule 9(b)." *Whittingham,* 2007 U.S. Dist. LEXIS 33476, at *15. Moreover, these are exactly the type of "collectivized allegations" that are barred by *Naporano*. The Complaint contains no allegations that any of the Moving Defendants personally made any statements or provided misleading information to MFC. MFC is required under Fed. R.

Civ. P. 9(b) to plead such specific allegations as to each defendant. *See In re Rockefeller Ctr.*, 311 F.3d at 217.

Moreover, nowhere does MFC allege the date, place or time that the allegedly false BBCs were created, reviewed, or transmitted to MFC, which is puzzling, since it appears that MFC is in possession of the same. While MFC alleges that the BBCs contained misrepresentations, it fails to allege why or how the Moving Defendants "knew or should have known" of the alleged inaccuracies. There is no presumption that the Director Defendants had any day-to-day involvement in the monitoring of WRS's billing systems or accounts receivables. *Canal Capital Corp. v. French*, 1992 WL 159008 (Del. Ch. 1992) (Delaware directors are not expected to manage the day-to-day activities of a company).

Nor does MFC explain when the Director Defendants learned or should have learned of the alleged inaccuracies in the BBCs; in what ways the Director Defendants were careless or negligent in ascertaining the accuracy of the BBCs; how or why the Director Defendants would want to induce MFC to act; or the origin of a duty on the part of the Director Defendants to ensure the accuracy of the BBCs. In short, MFC's allegations of fraudulent misrepresentation against the Director Defendants and the Valor entities do not come close to satisfying the heightened pleading standards of Fed. R. Civ. P. 9(b).

### C. MFC did not rely on the 2010 BBCs in making earlier advances under the loan agreements

MFC alleges that it relied on certain of the Debtors' 2010 BBCs -which ones are left unstated - which contained inaccurate financial information as a result of technical issues with the Debtors' transition to a new billing system, in making advances under

the loan agreements. (Complaint, ¶ 57, 67-70). However, by the time the 2010 BBCs was delivered to MFC, most of the $5.8 million claimed due by MFC has long been advanced. The pre-2010 advances were made in reliance on the 2005 loan documents. Taking the defective allegations of the Complaint at face value, the Debtors' representations set forth in the 2005 loan documents, which are quoted at length in the Complaint, were true and accurate at all times that the pre-2010 lending was advanced by MFC. Thus, according to MFC's allegations, the Debtors were not in violation of any loan covenants until at earliest 2010 and MFC is entitled, at most, to claim losses for funds advanced after it received the 2010s BBC.

## VI. <u>The Complaint Fails To Overcome the Business Judgment Rule</u>

Finally, even if MFC had standing to assert breach of fiduciary duty claims against the Moving Defendants despite *Gheewalla, Trenwick*, and the Valor Entities utter lack of liability for such claims, MFC's breach of fiduciary duty claim should still be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because its allegations fail to rebut the business judgment rule. Similarly, to the extent that the Complaint alleges that the Moving Defendants' lack of oversight and mismanagement of the Debtors led to the alleged misrepresentations that ground MFC's fraud claims, the business judgment rule immunizes the Moving Defendants from those claims as well. *Edgecomb*, 385 F.Supp.2d at 458 (D. Del. 2004) (The business judgment rule prevents courts from "injecting themselves into a management role.")

MFC's liability theory, were it the law, would have the deleterious effect of discouraging the entrepreneurial spirit amongst directors. In contrast, the business judgment rule embraces risk-taking by directors in order to maximize shareholder return. *Trenwick,* 906 A.2d at 193. Overly cautious directors, making only tepid



#1773152 v4
110189-71024

business decisions out of fear of personal liability, stifle growth and undermine shareholder investments. *Gagliardi*, 683 A.2d at 1052; *Edgecomb*, 385 F.Supp.2d at 458 (Business judgment rule encourages directors "to assume entrepreneurial and risk-taking activities.").

The low threshold for personal liability of directors that is impliedly advocated by MFC would dissuade board service by competent people (particularly in view of the staggering potential liability compared to the modest compensation directors receive). *Gagliardi*, 683 A.2d at 1052-53 (Given the "stupefying disjunction between risk and reward for corporate directors" it is in shareholders' interests to protect directors from personal liability); *Caremark,* 698 A.2d at 971 (The test for director liability is "quite high" in order to make "board service by qualified persons more likely. . ."). This is a further counterproductive consequence of MFC's liability theory, and another reason why it is squarely rejected by the business judgment rule.

Under Delaware law, the business judgment rule provides a "powerful presumption" (*Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993)) that "'directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Edgecomb*, 385 F.Supp.2d at 462 (citations omitted). The rule has been carefully crafted by the Delaware courts to promote corporate and shareholder welfare. Underpinning the rule are three principal policy considerations, which are set forth below in order of importance:

(i) Directors should be encouraged to take risks in guiding a corporation's business operations so as to maximize shareholder interests. Business growth, and

consequent increase in shareholder wealth, always comes with associated risk. However, if directors face personal liability for corporate losses should their risk-based decisions not pan out, then they will be loathe to take any risks, thereby leading to stagnation, and the undermining of shareholder welfare. As stated by the court in *Gagliardi*:

> Shareholders don't want (or shouldn't rationally want) directors to be risk averse. Shareholders' investment interests. . . will be maximized if corporate directors. . . accept for the corporation the highest risk adjusted returns available. . . . But directors will tend to deviate from this rational acceptance of corporate risk *if* in authorizing the corporation to undertake a risky investment, the directors must assume some degree of personal risk relating to *ex post facto* claims of. . . liability for any resulting corporate loss . . . Obviously it is in the shareholders' economic interest to offer directors sufficient protection from [such] liability. . . .

683 A.2d at 1052-53; Accord, *Weiss v. Temp. Inv. Fund, Inc.*, 692 F.2d 928, 941 (3rd Cir. 1982) (It is of "monumental social utility" to "encourage [directors] to assume entrepreneurial and risk-taking activities.")

Nor does the importance of risk-taking suddenly evaporate when a corporation falls on hard times, as MFC's liability theory would have it. On the contrary, continued operations may benefit shareholders and creditors alike, as the Bankruptcy Code itself recognizes. *Trenwick*, 906 A.2d at 193 ("[B]usiness failure is an ever-present risk. The business judgment rule exists precisely to ensure that directors. . . acting in good faith may pursue risky strategies. . . .") As the Court in *Trenwick* further explained, there is no duty to liquidate an insolvent corporation, and the board has every right to undertake risk-based strategies to try and turn things around without incurring personal liability if the effort fails:

> If the board of an insolvent corporation, acting with due diligence and good faith, pursues a business strategy that it believes will increase the corporation's value, but that also involves the incurrence of additional debt, it does not become a guarantor of that strategy's success. That the strategy results in continued insolvency and an even more insolvent entity does not in itself give rise to a cause of action. Rather, in such a scenario the directors are protected by the business judgment rule. To conclude otherwise would be fundamentally transform Delaware law.

*Id.* at 205.

Unlimited personal liability of directors would have another deleterious effect--given the huge disparity between director compensation, and the potential exposure for multi-million dollar corporate losses, qualified people would be extremely reluctant to take on the job. Discouraging competent people from serving on corporate boards plainly injures shareholder interests. *Caremark,* 698 A.2d at 971 ("[A] demanding test of [director] liability" is "beneficial to corporate shareholders" since it "makes board service by qualified persons more likely. . ."); *Weiss*, 692 F.2d at 941 (same)

Lastly, judges and juries are ill-equipped to serve as super-directors, and second guessing of board decisions would be injurious to shareholder interests. *Caremark,* 698 A.2d at 967 ("[S]ubstantive second guessing" of director decisions "by ill-equipped judges and juries" would be "injurious to investor interests."); *Weiss,* 692 F.2d at 941 ("Were courts, with perfect retrospective vision, to second-guess the judgment of . . . directors in their decision-making function, they would be injecting themselves into a management role for which they are neither trained nor competent.")

For all of these reasons, in the absence of facts showing a conflict of interest or intentional disregard of directorial duties (i.e., a breach of the duty of loyalty), a

corporate director is not legally responsible for losses that may be suffered as a result of a decision that the director has made. *Gagliardi*, 683 A.2d at 1052-53; *Edgecomb*, 385 F.Supp.2d at 462-463. This is true whether another observer might view the decision as "unwise, foolish or even stupid." *Gagliardi*, 683 A.2d at 1053; *Caremark*, 698 A.2d at 968 (Just because a person "after the fact, believes a decision substantively wrong, or degrees of wrong extending through 'stupid' to 'egregious' or 'irrational,' provides no ground for director liability. . . .")[16]

This means that MFC's allegations criticizing the Director Defendants' alleged lack of oversight of the Debtors' management in rendering financial information to MFC are of no moment. It is simply insufficient for MFC to allege that WRS' officers issued misleading financial information and then try to summarily attribute this alleged administrative misconduct to the Director Defendants. *Stone*, 911 A.2d at 372 (As a general rule, directors are not personally liable for employee failures because most corporate decisions are "not the subject of director attention.")

On the contrary, to get around the business judgment rule, MFC must allege facts supporting a plausible inference that the Director Defendants (i) breached their duty of loyalty, because they had conflicts of interest in the MFC loan transaction, approved the transaction intending to and knowing it would injure the Debtors, knew the BBC's were false, and/or exercised no oversight whatever over management practices; or alternatively, (ii) breached their duty of care, because in overseeing management's

---

[16] Although there is a "theoretical exception" for decisions reached through an irrational decision-making process (*Brehm*, 746 A.2d at 264: "Irrationality" in the decision-making process "is the outer limit of the business judgment rule. . ."), no Delaware case has imposed director liability on that basis. *Gagliardi*, 683 A.2d at 1051-52; *Stanziale v. Nachtomi,* 330 B.R. 56 (D.Del. 2004), aff'd in part and rev'd in part on other grounds, *In re Tower Air,* 416 F.3d 229 (3rd Cir. 2005). In short, the business outcome of a director decision that is "unaffected by director self-interest or bad faith cannot itself be an occasion for director liability. That is the hard core of the business judgment doctrine." *Gagliardi*, 683 A.2d at 1051.

dealings with MFC they employed a decision-making process that was completely irrational. MFC's allegations do not begin to support any such inferences, much less "plausibly" so.[17]

## A. MFC's allegations do not overcome the presumption that the Director Defendants acted loyally

Delaware courts recognize two types of duty of loyalty claims against directors of a corporation: (i) conflict of interest or (ii) conscious disregard of directorial duties evidencing a lack of good faith. *Stone*, 911 A.2d at 370. MFC's allegations fall far short of establishing either type of loyalty claim.

### 1. The complaint does not allege a conflict of interest on the part of the Director Defendants.

"'[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director . . . *and not shared by the stockholders generally*.'" *Edgecomb*, 385 F.Supp. 2d at 460 (emphasis supplied). Here, the Complaint contains no allegations regarding director self-dealing.

[17] *Twombly*, 550 U.S. at 557 adopted the "plausibility" requirement and eliminated the apparent dichotomy between the pleading standards for rebutting the business judgment rule in the Delaware courts, and in the federal courts applying Delaware law. See *Tower Air*, 416 F.3d at 229, 236-238. As the court in *Desimone v. Barrows*, 924 A.2d 908. 928-929 (Del. Ch. 1007) observed, the *Twombly* decision, by abandoning the "no set of facts" standard in *Conley v. Gibson* and imposing a plausibility pleading requirement, has aligned the federal courts with the longstanding Delaware rule: a disgruntled plaintiff must allege sufficient facts to plausibly suggest that it is entitled to relief-- i.e., that it can overcome the business judgment rule; conclusory allegations to that effect, or allegations that render the alleged misconduct merely "conceivable" will not suffice.

The Court's *Twombly* decision strengthening the federal pleading requirement was driven by the same concerns that impel the Delaware courts-- the extraordinarily expense of discovery and the burden this imposes on directors. *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000) (The business judgment rule would lose much of its protective force if directors have to defend their decisions, and incur the time and expense of discovery, based on conclusory allegations). *Twombly,* 127 S.Ct. at 1967 (Allegations must reach the level of plausibility to avoid the potentially enormous expense of discovery in cases with no reasonable prospect of stating a claim).



#1773152 v4
110189-71024

2. **<u>The complaint does not allege that the Director Defendants consciously disregarded any directorial duties.</u>**

The second type of loyalty claim-- conscious disregard-- incorporates aspects of good faith, and requires, at a minimum, scienter on the part of the allegedly offending director. *Stone,* 911 A.2d. at 369 (A failure to act in good faith may be shown where "a fiduciary *intentionally* fails to act in the face of a *known* duty to act, demonstrating a *conscious* disregard for his duties." (emphasis supplied)); *Desimone*, 924 A.2d at 936 (Loyalty claim based on bad faith "require[s] proof of scienter. . . ."). The *Stone* court outlined three categories of director disregard that are actionable as a breach of the duty of loyalty:

(i) intentionally acting with a purpose other than advancing the best interests of the corporation;

(ii) acting with intent to violate the positive law; and

(iii) a knowing and systematic failure to exercise oversight.

911 A.2d at 370-71.

The only conceivable alleged loyalty breach discernable from MFC's Complaint arises under the third category, which has been given the shorthand "director oversight liability" *Id.* at 370. The *Stone* court addressed this liability theory at length, and expressly adopted the reasoning in *Caremark* as controlling:

> *Caremark* articulates the necessary conditions predicate for director oversight liability: (a) the directors utterly failed to implement any reporting or information systems or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention. In either case, imposition of liability requires a showing that the directors *knew* that they were not discharging their fiduciary obligations.

*Stone*, 911 A.2d at 370 (citations omitted, emphasis added).

Here, MFC's sole allegations that could possibly be interpreted to support a lack of director oversight are that:

- The Debtors "by and through their respective Directors and Officers . . . negligently misrepresented the stated amount of their accounts receivable by inflating their value by at least $1,245,260 on the BBCs present to MFC pursuant to the Loan Documents (the 'Double Billing')" (Complaint, ¶ 44).

- "Valor (by and through Wasielewski, Shulkin, Sun and others) and WRS' management (by and through Dunican and, subsequently Muench) oversaw WRS' transition to a new accounting/data management system known as 'Timberline.' [. . .] Valor and WRS knew for months prior to the Petition Date that the information it was obtaining from and thereafter reporting to MFC on its BBCs was inaccurate. Nevertheless, Defendants continued to negligently or knowingly misrepresent the inflated value of their accounts receivables to MFC." (Complaint at ¶¶ 49-50.);

- "At the May 25, 2010 Board Meeting, Dunican reported to the Board of Directors that there were "issues with migration from CE to Timberline [that] caused double billing in [the] first quarter. Notwithstanding Dunican's discussion with the Board . . . neither WRS nor any of its Officers, Directors or employees provided MFC with any prior notice of the Double Billing . . ." (Complaint at ¶¶ 53-54); and

- "WRS' Directors and Officers similarly failed to exercise the appropriate level of care in managing WRS' deposit accounts, in which the proceeds of MFC's Collateral were wrongfully deposited." (Complaint at ¶ 61).

These allegations are manifestly insufficient to state a breach of loyalty claim. Nowhere does MFC allege facts (as opposed to conclusions) to support a plausible inference that (i) the Director Defendants *knew* that the Debtors were providing misleading financial information; (ii) *knew* that the Debtors wrongfully deposited MFC collateral; (iii) *knew* that internal controls at the Debtors were deficient; or (iv) *knew* that the lack of controls would leave room for materially harmful behavior on the part of the officers and *chose* to do nothing about it. *Desimone,* 924 A.2d at 936.

In short, MFC has alleged nothing at all like the "systematic and sustained failure" to exercise oversight required by *Caremark* to establish director oversight



#1773152 v4
110189-71024

liability. *Caremark,* 698 A.2d at 971 (describing the "demanding test of [oversight] liability"). As a consequence, MFC's loyalty claim necessarily fails to state a claim for relief, and Count II should be dismissed. *Stone*, 911 A.2d at 372 ("[O]nly a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – will establish the lack of good faith that is a necessary condition to liability.")

**B. Plaintiffs' allegations do not overcome the presumption that the Director Defendants exercised due care.**

Breach of the duty of care, although a "theoretical" possibility, is an extremely difficult theory to prevail on. *Gagliardi*, 683 A.2d at 1051-52. This is because the duty of care is not breached by negligence or bad decisions – directors "are not guarantors of the financial success of their management efforts." *Walton*, 315 F.3d at 233; *Caremark*, 698 A.2d at 967 (irrelevant whether a decision was "substantively wrong, or degrees of wrong extending through 'stupid' to 'egregious' or 'irrational'"). Indeed, the duty of care has nothing to do with the content of a corporate decision, but only the process by which it was made:

> Compliance with a director's duty of care can never be appropriately determined by reference to the content of the board decision that leads to a corporate loss, apart from consideration of the good faith or irrationality of the process employed.

*Walton*, 315 F.3d at 232; *Caremark*, 698 A.2d at 967.

Moreover, the proper standard for determining whether there has been an actionable lack of care is gross negligence. *Brehm*, 746 A.2d at 259 ("the directors' process is actionable only if grossly negligent."). To allege gross negligence, MFC must allege sufficient facts to support a plausible inference that the Director Defendants

"acted with so little information that their decision was 'unintelligent and unadvised,' or outside of 'the bounds of reason and reckless. . .'" *In re General Motors Class E Buyout Securities Litigation*, 694 F.Supp. 1119, 1133 (D. Del. 1988) (citations omitted).

Here, MFC has failed to allege any facts demonstrating deficiencies (much less gross negligence) in the Defendant Directors' decision-making process with respect to the MFC loan or the Debtors' reporting of financial information to MFC. To the contrary, MFC's overlapping allegations boil down to a conclusory accusation that the Debtors, "by and through" their directors and officers, misrepresented financial figures to MFC, (Complaint ¶ 76), but the Complaint fails to specify what the oversight and deliberative process was, what information was supposedly overlooked or ignored, and how it rose to the level of "unintelligent and unadvised." *Id.*. at 1133.

As the court in *Trenwick* observed in dismissing a due care claim challenging a corporate acquisition, to state such a claim, the plaintiff must allege not just "inadequate" due diligence, which sounds in negligence, but no due diligence, the complete failure to retain any advisors, a decision made at a single meeting following a cursory management presentation – in other words, a grossly negligent, wholly irrational decision-making process. *Trenwick*, 906 A.2d at 192-193. Because the requisite allegations are entirely missing from the complaint, plaintiffs have not "stated a viable claim for breach of fiduciary duty" based on the duty of care. *Trenwick*, 906 A.2d at 206. Accordingly, MFC's duty of care claim as against the Director Defendants must be dismissed.



#1773152 v4
110189-71024

## VII. Conversion and Unjust Enrichment Claims

### A. Conversion

To prove conversion under Illinois law, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Western States Insurance Co. v. Louis E. Olivero & Associates*, 283 Ill. App. 3d 307, 310, 670 N.E.2d 333 (1996).

Under New Jersey law, conversion consists of the wrongful exercise of dominion and control over property owned by another inconsistent with the owners' rights." *Sun Coast Merchandise Corp. v. Myron Corp.*, 393 N.J. Super. 55, 84 (App. Div. 2007) (citations omitted). If the item claimed to have been converted is money, "[i]t is essential that the money converted by the tortfeasor must have belonged to the injured party." *Commercial Ins. Co. of Newark v. Apgar*, 111 N.J. Super. 108, 115 (Law. Div. 1970). Accordingly, the elements of conversion are (1) the existence of property; (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Bridgestone /Firestone N. Am. Tire, LLC v. LePore*, 2007 U.S. Dist. LEXIS 92588, at *20 (D.N.J. Dec. 17, 2007).

Here, MFC's conversion claim (Count V) is inextricably tied to and is entirely reliant upon the merit of the underlying allegations in Counts I through IV by MFC's admission. (Complaint, ¶ 97). If those claims fail, the conversion claim must also fail because MFC will not be able to prove that the Defendants have wrongfully detained property - the $5.8 million loan proceeds, or more likely, the portion of that amount advanced in 2010 - that rightfully belongs to MFC. Put another way, absent MFC's

proof of the elaborate fraud alleged in the Complaint, MFC is not entitled to damages, but is left with the deal that it bargained for in the loan documents: the role of secured lender whose debtor failed, leaving MFC with resort to its collateral.

### B. <u>Unjust Enrichment</u>

Illinois cases are not entirely clear on whether unjust enrichment is a separate cause of action or whether it must be tied to an underlying cause of action, such as fraud or breach of fiduciary duty.[18] In *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 513 (7th Cir. Ill. 2011), the Seventh Circuit recently offered a suggested resolution to the debate: "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim. *See, e.g., Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."). Accordingly, under Illinois law, MFC's claim for unjust enrichment (Count VI) must fail because it is tied to the same allegations underlying Counts I through IV.

In New Jersey, unjust enrichment "involves a two part test: plaintiff must show both that the defendant received a benefit, and that the retention of the benefit without payment would be unjust." *Russell-Stanley Corp. v. Plant Indus. Inc.*, 250 N.J. Super.

---

[18] *See In Raintree Homes, Inc. v. Vill. of Long Grove,* 807 N.E.2d 439, 445 (Ill. 2004) ("The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action."); *but see Martis v. Grinnell Mut. Reinsurance Co.,* 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery. [ . . . ]. When an underlying claim of fraud, duress or undue influence is deficient, a claim for unjust enrichment should also be dismissed.").

(Ch. Div. 1991). Retention without payment is unjust if, had "the true facts [been] known to the plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332 (App. Div. 1966).

As with MFC's conversion claim, the unjust enrichment claim is dependent upon the fraud and breach of fiduciary duty claims set forth in Counts I-IV of the Complaint. (Complaint, ¶103). If those claims fail, MFC cannot prove that the Defendants' retention of whatever benefits were created by the receipt of the loan proceeds would be unjust.

## VIII. Conclusion

For the foregoing reasons, the Moving Defendants respectfully request that the Court dismiss the Complaint as against them in its entirety, with prejudice.

**GIBBONS P.C.**

*Attorneys for Defendants Valor Equity Partners, L.P., VWR Holdings, LLC, Valor Management Corporation, Antonio Gracias, Bradley Sheftel, and Jonathan Shulkin*

By: /s/ Dale E. Barney
Dale E. Barney

One Gateway Center
Newark, NJ 07102-5310
Tel.: 973-596-4500
Fax: 973-596-0545
E-mail: dbarney@gibbonslaw.com

**Dated:** April 27, 2012
Newark, New Jersey